## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTICT OF OKLAHOMA

**WADRESS HUBERT METOYER JR.,**
Plaintiff,

v.

Case No. _____



**FILED**

MAY - 6 2019

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

(1)    **DELYNN FUDGE** in her individual
Capacity and in her official capacity as
Executive Director of the Oklahoma
Pardon and Parole Board,
(2)    **TOM GILLERT** in his individual
Capacity and in his official capacity as
Chairman of the Oklahoma Pardon and
Parole Board,
(3)    **ROBERT MACY** in his individual
Capacity and in his official capacity as
Member of the Oklahoma Pardon and
Parole Board,
(4)    **C. ALLEN McCALL, esq.** in his individual
Capacity and in his official capacity as
Member of the Oklahoma Pardon and
Parole Board,
(5)    **MICHAEL KRIS STEELE** in his individual
Capacity and in his official capacity as
Member of the Oklahoma Pardon and
Parole Board,
(6)    **ROBERTA "ROBBIE" FULLERTON** in her individual
Capacity in his official capacity as Member of the Oklahoma Pardon
And Parole Board,

Defendants.

### PRO SE PRISONER CIVIL RIGHTS COMPLAINT

Comes now Wadress H. Metoyer Jr., Plaintiff named in the above
styled cause of action.

### COMPLAINT

**I.     Jurisdiction is asserted pursuant to:**

1

X   42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3) (NOTE: these provisions generally apply to state prisoners), or

___ *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and 28 U.S.C. § 1331 (NOTE: these provisions generally apply to federal prisoners)

If you want to assert jurisdiction under different or additional statutes, list these below:

## II.   State whether you are a:

X   Convicted and sentenced state prisoner
___ Convicted and sentenced federal prisoner
___ Pretrial detainee
___ Immigration detainee
___ Civilly committed detainee
___ Other (please explain)

## III.   Previous Federal Civil Actions or Appeals

List each civil action or appeal you have brought in a federal court while you were incarcerated or detained in any facility.

1. Prior Civil Action/Appeal No. 1

a.  Parties to previous lawsuit:

Plaintiff(s):  Glynn Simmons, et al. Plaintiff

Defendant(s):  Mary Fallin, et al. Defendants cited as: 2017 WL

6606859

b. Court and docket number:    CIV-17-908 SLP

c. Approximate date of filing:    August 23, 2017

d. Issues raised:

**Count I**, Defendant Fallin knowingly created and purposefully failed to correct prison overcrowding by guaranteeing defendants CCA and GEO 98% occupancy and refusing to adopt sound reform measures; **Count II**, violation of Plaintiffs' Eighth Amendment Protection against cruel and unusual punishment; **Count III**, violation of Plaintiffs' have been denied the right to fair and impartial parole consideration in violation of their Fourteenth Amendment rights to Equal Protection; **Count IV**, Defendant CCA and GEO were afforded influence over criminal justice policy making and are civilly liable to Plaintiffs and Oklahoma citizens for promoting policies that unjustifiably increased imprisonment and thereby dismissed funding to other vial state agencies.

     e. Disposition (for example: Did you win? Was the case dismissed? Was summary judgment entered against you? Is the case still pending? Did you appeal?):

The case was dismissed without prejudice-to re-file.

     f. Approximate date of disposition:

December 27, 2017


## IV.   Parties to Current Lawsuit
State information about yourself and each person or company listed as a defendant in the caption (the heading) of this complaint.

1.   Plaintiff

     Name and any aliases:  Wadress Hubert Metoyer Jr., Moses Hubert Metoyer Muhammad, 1988 granted name change.

     Address:    North Fork Correctional Center, 1605 E. MAIN, Sayre, OK 73662

     Inmate No.: 88275

2..    Defendant No. 1

Name and official position:

**DELYNN FUDGE**:   Executive Director of the Oklahoma Pardon and Parole Board.

Place of employment and/or residence:

Oklahoma Pardon and Parole Board Attn:  Board Communications P.O. Box 53448, Oklahoma City, OK 73152

How is this person sued? ( ) official capacity, ( ) individual capacity,(x) both

3.    Defendant No. 2

Name and official position:

**TOM GILLERT**:  Chairman of the Oklahoma Pardon and Parole Board.

Place of employment and/or residence:

Oklahoma Pardon and Parole Board Attn:  Board Communications P.O. Box 53448, Oklahoma City, OK 73152

How is this person sued? ( ) official capacity, ( ) individual capacity,(x) both

4.    Defendant No. 3

Name and official position:

**ROBERT MACY**:  Member of the Oklahoma Pardon and Parole Board.

Place of employment and/or residence:

Oklahoma Pardon and Parole Board Attn:  Board Communications P.O. Box 53448, Oklahoma City, OK 73152

How is this person sued? ( ) official capacity, ( ) individual capacity, (x) both

5.     Defendant No. 4

Name and official position:

**C. ALLEN McCALL, esq.** : Member of the Oklahoma Pardon and Parole Board.

Place of employment and/or residence:

Oklahoma Pardon and Parole Board Attn: Board Communications P.O. Box 53448, Oklahoma City, OK 73152

How is this person sued? ( ) official capacity, ( ) individual capacity, (x) both

6.     Defendant No. 5

Name and official position:

**MICHAEL KRIS STEELE** : Member of the Oklahoma Pardon and Parole Board.

Place of employment and/or residence:

Oklahoma Pardon and Parole Board Attn: Board Communications P.O. Box 53448, Oklahoma City, OK 73152

How is this person sued? ( ) official capacity, ( ) individual capacity, (x) both

7.     Defendant No. 6

Name and official position:

**ROBERTA "ROBBIE" FULLERTON:** Member of the Oklahoma Pardon and Parole Board.

Place of employment and/or residence:

Oklahoma Pardon and Parole Board Attn:  Board Communications P.O. Box 53448, Oklahoma City, OK 73152

How is this person sued? ( ) official capacity, ( ) individual capacity,(x) both

## V.    Cause of Action

Claims

List the federal right(s) that you believe have been violated, and describe what happened. Each alleged violation of a federal right should be listed separately as its own claim.

1.    **Claim 1:**

(1)    **List the right that you believe was violated:**

The 1997 Oklahoma Legislature mandated that all types of parole consideration are abolished for those in the custody of the Department of Correction (DOC) for crimes committed prior to July 1, 1998-effective date July 1, 1998, and created a "major change" in the Pardon and Parole Board laws and policy 57, O.S. Supp. 1998, Section 332.7 (A) (1) governing their eligibility for consideration for parole review.

Both Plaintiffs' United States federal constitution rights and state created statutory liberty interest rights were denied when the Oklahoma Pardon and Parole Board (PPB) November 2015 initially scheduled eligibility parole paper docket review and November, 2018 three (3) year pass over/reconsideration paper docket review failed to administer their mandated duties and responsibilities as directed by the 1997 thru 2018 Legislature to establish procedures to apply the provisions of Sections 6, 598, 599, 600 and 601, Chapter 133, O.S.L. 1997 to offender's crime he committed prior to July 1, 1998 upon his consideration for eligibility for parole. Due process has been denied in violation of U.S.C.A. Amends. 5th and 14th to a full, fair and meaningful in-person parole hearing, upon statutory language and provisions, 57 O.S. Supp. 1998-2018, section 332.7 (A), and its subsections.

Where Oklahoma offenders had no right to parole, prior to 1998 there was a right to the expectation of seeing the board annually after serving one-third (1/3) of their sentence. Seeing the board annually and making a personal plea before the board was a right granted Oklahoma offenders prior to July 1, 1998, that eligibility for a in-person parole hearing was a **liberty interest right** protected by due process and equal protection of law. U.S.C.A. 14th Amendment.

**(2)   List the defendant(s) to this claim: (If you have sued more than one defendant, specify each person or entity that is a defendant for this particular claim.)**

The defendants to this claim are the same defendants listed as parties to this law suit.

**(3)   List the supporting facts:**

In Plaintiffs' issue of first impression for review, the facts are clear and simple, the 1997 Oklahoma Legislature abolished all types of parole consideration for "any person in the custody of DOC for a crime committed prior to July 1, 1998, and mandated no consideration for parole and/or reconsideration "shall" be considered except in accordance with this section 57, O.S. Supp 2011, subsection (E). See also subsection (F), which directed the PPB to develop and administer a procedure for determining what sentence "a crime committed prior to July 1, 1998. for a person eligible for parole consideration pursuant to subsection (A) of this section would have received under the applicable matrix. All reference in this section 332.7 (A), to matrices or schedules "shall" be construed with references to the provisions of Section 6, 598, 599, 600, 601, Chapter 133, O.S.L. 1997 See "Note of Decision" to title 57, O.S. Supp. 2013, Section 332.7-validity 1. Which states: The 2013 amendments and repeals made to the statutes governing the consideration commutation pardon and parole are within the Legislature's constitutional authority to enact regulations and to prescribe minimum

mandatory terms of confinement and are not-in-consisted with Okla. Const. Art. VI Section 10, OP Atty. Gen. No. 2013-19, (Oct. 18, 2013 WL 5769199.

*See* Pardon and Parole Board Policy and Procedure Manual Eligibility Criteria-Docketing Policy 004.

**I. Policy:**   Eligibility criteria will be established for clemency. The criteria will be implemented by procedures distributed by the Executive Director and will follow statutory provisions:

> 2. For a crime committed prior July 1, 1998, any person in the custody of the Department of Corrections <u>shall</u> be eligible for consideration for parole at the earliest of the following dates:
>
> a.    Has completed serving 1/3 of the sentence;
>
> b.    Has reached at least 60 years of age and also has served at least 50% of time of imprisonment that would have been imposed for that offense pursuant to the applicable Truth in Sentencing matrix, provided in Section 598 through 601, Chapter 133, O.S.L. 1997; provided however no inmate serving the sentence for crimes listed in schedules A, S-1, S-2 or S-3 of Section 6, Chapter 133, O.S.L. 1997,or serving a sentence of Life imprisonment without parole shall be eligible to be considered for parole pursuant to this paragraph;
>
> c.    Has reached 85% of the midpoint of the time of imprisonment that would have been imposed for an offense listed in schedules A, S-1, S-2 pr S-3 of Section 6, Chapter 133, O.S.L. 1997, pursuant to the applicable matrix; provided, however, no offender serving a sentence of Life imprisonment without parole shall be eligible to be considered for parole pursuant to this paragraph; or
>
> d.    Has reached 75% of the midpoint of the time of imprisonment that would have been imposed for an offense that is listed in any other schedule, pursuant to the applicable matrix; provided, however, no offender serving a sentence of Life imprisonment without parole shall be eligible to be considered for parole pursuant to this paragraph.

See Attachment # A

The 1997 Oklahoma Legislature created a protected statutory liberty interest right in 57 O.S. Supp. 1998 through 2018, Section 332.7 (A) for a person's crime committed prior to July 1, 1998. Plaintiff's crime was committed in 1982. Because Plaintiff was not convicted until 1996 and did not begin serving his sentence of Life with parole until 2000, he did not become eligible nor did he quality for the statutory provision of Section 332.7 (A) until his initial schedule 1/3 eligibility date November, 2015 docket upon completion of serving 1/3 of sentence Life "equate to a 45 year sentence" (15 years) and having completed 85% of the midpoint of 18-60 years (A schedule A crime) matrix, subsection (A) (3).

Plaintiff requested in both his applications for parole (November, 2015) and (November, 2018) three (3) year pass-over/reconsideration for parole, to include the statutory provision procedure/hearing to determine what sentence he would have received under the applicable matrix, provided in section 6, Chapter 133, O.S.L. 1997. See attachments #B and #C, letters in support of applications for parole (initial parole hearing docket and three (3) year pass over reconsideration 2015 and 2018).

Upon Plaintiffs' supporting facts to his claim: (1) he has met the requirements for an impartial investigation and review; (2) he met the eligibility criteria for clemency to follow the implemented procedures mandated in the statutory language and provision of Section 332.7 (A), and its subsections (A) (1) (3) (C) (2) (E), (F),( )J, and (M) due process of law U.S.C.A. Const. Amend XIV Due Process violation; and, the fact the PPB failed in its duty to examine into the merits of Plaintiffs' two (2) applications and make an impartial investigation, upon recommendation based on the board's two (2) (PPB) investigator's reports "yes" votes for recommendations for parole; (3) the PPB failed in its duty to cause an examination to be made at the penal institution where he is assigned, and to make inquiry into Plaintiffs' conduct and record during his custody in DOC; (4) to provide a parole hearing to include an opportunity to review the investigator's report

and other pertinent information on Plaintiff, to hear input from Plaintiffs' family, friends, and to question him directly in order to assess his readiness for parole and/or clemency and his risk to the public, if any, because Plaintiff's 2018 Investigative Report did not include a risk assessment evaluation, he directs the court to his 2015 Investigative Report prepared and completed by Melinda Smith-Brooks as Plaintiff's overall risk level being low moderate risk. See attachments #D and #E.

Because the PPB rejected both staff of the Board's Investigator's completed reports 2015 and 2018, recommendations based on their impartial investigations and the merits of Plaintiff's applications and their (PPB) refusal to comply and administer the statutory language in its mandated duties commands "<u>shall</u>" within the statutory provision of 57 O.S. Supp. 1998 through 2018 § 337.7 (A), effective November 1, 2018, prior to Plaintiff's reconsideration application and docket parole hearing for November 2018.

Based on the standard of parole and reconsideration review afforded Plaintiff 2015 and 2018 applications, for his crime committed prior to July 1, 1998 denying him a full fair and meaningful review/hearing which violated the fundamental fairness principles of due process to a fair parole hearing. Okla. Const. Art. 2 Section 7 "Due process of Law" holds: "No person 'shall' be deprived of life, liberty, or property, without due process of law. See Title 75 of O.S. Section 308 (C) which states: "Rules <u>shall</u> be valid and binding on persons they affect, and <u>shall</u> have the force of law unless amended or revised or unless a court of competent jurisdiction determines otherwise. Except as otherwise provided by law, rules <u>shall</u> be prima facie evidence of the proper interpretation of the matter to which they refer.

The supporting facts are: The Oklahoma Legislature (1998 through 2018) have charged the PPB to implement 57 O.S. § Supp. 1998 – 2018, Section 332.7(A), and its subsections to apply these procedures and guidelines to persons who have been sentenced prior to July 1, 1998, and who have become eligible for parole consideration and have met eligibility criteria

for clemency within the statutory language and provisions of Section 332.7 (A) (1) (3) (C) (2). A major change in PPB laws and policy for pre-1998 offenders.

Since the PPB's decision at its initial review hearing is one that must be made largely on the basis of the inmate's file (Jacket Review) this procedure must adequately safeguard against serious risk of error and thus satisfies due process for an meaningful opportunity for release through statutory provisions for persons crimes committed prior to July 1, 1998.

For example see Petitioner's completed Investigative Report prepared for his November 2015 jacket review page 3, information contained in 17. Risk Assessment: Static Risk Factor 3. Current Offense Severity: DUI, SEX, Homicide, Rape, Assault, Drug Sales. The "Only" offense contained therein of truth was the homicide, as Petitioner's crime is first degree murder the other crimes listed holds no truth in them as pertained to Petitioner and are of serous error and should not have found its way in Petitioner's parole investigative report giving an impression they are somewhat, somehow connected to Petitioner.

U.S.C.A. 14th Amend *due process* violation, because the November 2015 PPB failed to provide Petitioner a meaningful review upon the merits of his application/request the fundamental fairness principles of due process to a full, fair and meaningful opportunity to release through an impartial parole review hearing was denied. And the fact the "only" provision of 57 O.S. Supp. 1998 through 2018, Section 332.7 (A), applied and administered was the pass-over/reconsideration in three (3) years, November, 2018 Docket, subsection (E) (1) (Supp. 2018).

On August 23, 2017, Petitioner among numerous others who's crimes also were committed prior to July 1, 1998, cause to be filed a class action suit under the provision of 42 U.S.C. § 1983 Case No CIV-17-908-SLP in addressing the above *due process* violation. On December 27, 2017, an order was entered in Glynn Simmons, et al., Plaintiff v. Mary Fallin, et al.,

defendants, dismissing cause finding joinder of plaintiffs in this action is not feasible. Dismissal was without prejudice to each of the plaintiffs refiling their claims in separate lawsuits. See Attachment # _F_ copy of said order.

Because Petitioner had less than a year before his scheduled reconsideration hearing before the PPB, November 2018 docket jacket review and the fact that the PPB had continuously selectively applied and administered the statutory language and commands in Section 332.7 (A) (1) (3) (C) (1) (2) (E) and (F) (Supp. 2011) to some offenders and crimes (Schedule A included) committed prior to July 1, 1998.

Petitioner decided once again to submit his application for parole attached to the provisions of Title 57 O.S. Supp. 2018, Section 332.7 (A) and its subsections addressing his eligibility for the statutory provision of a procedure/hearing to determine what sentence he would have received under the applicable matrix, See attachment # _C_ Petitioner's letter/application of consideration. See also attachment # _E_, Parole Investigative Report submitted by Brittany King after her interview on September 10, 2018, she concluded in her investigation and findings upon the evidence based risk assessment that Petitioner has completed all required programs "yes" parole is recommended and evaluation of alternative release programs: None, Petitioner is 69 years old and would be on parole for the rest of his life-noted by Ms. King. Both Petitioner's 2015 and 2018, investigation, findings and recommendations included a yes for parole to be recommended. But, the facts are both reports failed to evaluate on alternative release program under the statutory provision in Section 332.7 (A) (1) (3) (E) and (F), because Petitioner would have satisfied the mid-point of 18-60 years plus earned credits, 57 O.S. Section 138 as to its duration for completion for discharge, a full, fair and meaningful opportunity for release was denied by the PPB in not considering these facts in a determination hearing to what sentence he would have received under the applicable matrix and had Petitioner discharge that sentence for release, as it had systemically found in some offender's who's

crime was committed prior to July 1, 1998, upon their applications for parole and while denying many others such as Petitioner. See both Investigative Reports for entities for "Evaluation of Alternative Release Programs:" None.

The facts being no release program was considered or evaluated for release under provision and statutory language and commands to be implemented and/or vote to be administered to Petitioner's crime committed prior to July 1, 1998. Once again the "only" provision of Section 332.7 (A) (1) and its subsections for pre-1998 offenders administered to Plaintiff's parole review was the 3 year pass-over to November, 2021. A major change in Oklahoma's Pardon and Parole Board's laws, provisions, and proceedings became effective July 1, 1998. And, recent provisions and proceedings is mandated under House bill 2286/57 O.S. Supp. 2018, 332.7 and its subsections.

(4)     **Relief requested: (State briefly exactly what you want the court to do for you.)**

Because the Oklahoma parole system has failed to provide a meaningful review to crimes committed prior to July 1, 1998 to offenders/petitioner being considered for parole at his one-third (1/3) consideration date (November 2015) and November 2018 reconsideration the fundamental fairness principles of due process to a full fair and meaningful opportunity to release through an impartial parole review hearing has been denied as mandated by the statutory language and commands in 57 O.S. Supp. 1998-2018, section 332.7, and its subsections.  A major change of law created for crimes/offenders prior to 7/1/98.

Section 332.7, and its subsections (A) (C) (1) (E) (F) and (M) in its statutory language  clearly and unambiguously uses the word "shall" ten (10) times in its construction of statute in commanding the PPB to apply the provision of and/or to administer the Act (57 O.S. 1998 Section 332.7 Supp. 2011)

Petitioner requested a hearing to apply and/or administer the statutory provision of the Act to his crime committed by to July 1, 1998 (a major change of law, pre-1998). His statutory created liberty interest right granted by the 1997 Legislature to a meaningful parole consideration as guaranteed under the Oklahoma Constitution Article VI § 10, Title 57, O.S. § 332.7, and O.S. Title 22, Section 1514.

2.    **Claim II:**

   (1)    **List the right that you believe was violated:**

Plaintiff, a prisoner whose crime was committed prior to July 1, 1998 and whose eligibility for parole consideration based upon the pre-1998 one-third (1/3) criteria (The Forgotten Man's Act) 57 O.S. (1971) Section 332.7 has become of a statutory class of prisoners systematically being denied equal protection of the law and deprived of confronting the witnesses against them in violation of the 6th and 14th Amendment to the U. S. Constitution during initial first stage parole hearing/jacket review. As opposed to in-person examination pre-1998 provisions and procedures afforded pre-1998 upon their eligibility for parole consideration.

   (2)    **List the defendant(s) to this claim:**

The defendants to this claim are the same defendants listed to claim (I) one.

   (3)   **List the supporting facts:**

Where Oklahoma offenders had no right to a parole, prior to 1998 there was a right to the expectation of seeing the board annually after having served 1/3 of the sentence. Seeing the board annually and making a personal plea before the board was a right granted Oklahoma offenders prior to July 1, 1998, that eligibility for a in-person parole hearing was a <u>liberty interest</u>.

Oklahoma Constitution Article 2, Section 7 "Due Process of Law" holds: No person "shall" be deprived of life, liberty, or property, without due process of law." See also Title 75 O.S. § 308.2 (c) holds: "Rules 'shall' be valid and binding on persons they affect, and 'shall' have the force of law unless amended or revised or unless a court of competent jurisdiction determines otherwise. Except as otherwise provided by law, "rules shall" be prima facie evidence of the proper interpretation of the matter to which they refer."

Prior to July 1, 1998 an inmate in the custody of DOC become eligible for an in-person parole consideration once he or she had served one-third (1/3) of their sentence imposed by the State's district courts. Their parole consideration consisted of a realistic opportunity to contribute to the fairness of the parole proceedings/hearing in lieu of his personal examination, as to question him directly in order to assess his readiness for parole and the risk to the public, if any and to directly hear his input, if any and to include the opportunity to confront any and all witnesses/reports against him. Plaintiff became eligible for parole consideration solely that he had completed serving one-third (1/3) of his sentence to be realistically considered for release on a parole.

Plaintiff had met the qualification by completing one-third (1/3) of a 45 year sentence, to include a life sentence 15 years. Plaintiff was eligible to be considered for parole on the November, 2015 parole docket but instead of a realistic consideration based upon his eligibility and meeting the qualification for an impartial review and an in-person hearing/examination based upon the investigative reports submitted in 2015 and again in 2018 reconsideration 3 year pass-over paper Jacket Review. The facts are the 2015 and the 2018 PPB failed to conduct a vote based on the investigative reports submitted for the Board to decide to consider Plaintiff for parole at a subsequent meeting. Because Plaintiff's parole consideration examination and/or hearing are constitutionally required to be held solely upon his eligibility and qualifications date. As he had completed serving one-third (1/3)

of his sentence (pre-1998) the 2015and 2018 PPB's failure, refusal and/or rejection to administer their statutory requirements and their unjustifiably use of 57 O.S. Section 571 as a "gateway" to deprive Plaintiff of an realistic opportunity for the Board to perform its duty in determining what sentence Plaintiff would have received pursuant to the Applicable Matrix sentencing guidelines upon a realistic consideration, denied him due process and equal protection under both state and federal constitutions-14th Amendment.

Plaintiff was constitutionally required a realistic parole consideration hearing based upon his one-third (1/3) eligibility qualifications by statutory provision and language. For the PPB to conduct a vote to decide whether or not to consider Plaintiff for parole at subsequent meeting shows he was denied his parole consideration in 2015 and 2018. Section C. Supp. 2011

The facts being plaintiff was not deny a parole due to the fact the PPB did not take a vote to grant and/or deny a parole upon his eligible and qualifications to be release on parole but conducted a vote to deny him a consideration for parole and unjustifiably using Section 571 to discriminate against him as a statutory class of offenders-during the initial/first stage upon his eligibility for consideration for parole in violation of due process and equal protection of law, both state and federal constitution, U.S.C.A. 14th Amendment.

Because of the "major changes" crafted in 57 O.S. (1971) Section 332.7 (The Forgotten Man's Act) to 57 O.S. Supp. 1997-98, Section 332.7 (A), and its subsections addressing pre-1998 prisoners eligibility, consideration and criteria for parole, the facts of this claim involves a challenge to constitutional operation of subsection 332.7 (C) or (D) Supp. 2011-2018, which reads:

> 1. At the initial hearing, the Pardon and Parole Board 'shall' review the completed report submitted by the staff of the Board and 'shall' conduct a vote regarding whether, based upon that report, the Board decides to consider the person for parole at a subsequent meeting of the Board;

The above "a major change" for pre-1998 inmates upon their one-third (1/3) eligibility and consideration (a two stage procedure) to include "a gateway" initial jacket review, as opposed to their pre-1998 in-person examination giving them a meaningful opportunity to confront any and all investigation reports being considered for or against pre-1998 inmates . In itself the "report and/or reports" operates as the *De facto* witness and/or witnesses; more often than not the "report" is used against the inmate to his detriment in lieu of a personal examination, to include a three (3) year pass-over without a realistic consideration conducted.

Because the PPB's decision at its initial review hearing is one that must be made largely on the basis of this inmate's file (Jacket Review) this procedure must adequately safe-guard against serious risk of error (as shown in Plaintiff's claim one herein) and thus satisfy due process for a meaningful opportunity for release through the "new major changes" in statutory provisions for persons crimes committed prior to July 1, 1998 "to determine what sentence they would have received pursuant to the applicable matrix: prior to Jacket review hearing. The first major change in statutory provisions and procedures (Subsection (A) (1) (2) (3) and (4)) and the Second major change "At the initial hearing, the PPB 'shall' review the completed report submitted by the staff of the Board and 'shall' conduct a vote regarding whether, based upon that report, the Board decides to consider the person for parole at a subsequent meeting of the Board..." An unfavorable majority vote a 'no vote' will result with a pass-over for three (3) years a reconsideration date. Each time a pre-1998 inmate is scheduled or rescheduled for a three (3) year-pass-over reconsideration without the benefit of an in-person examination/hearing, the right to be confronted with the witnesses against him and an determination of what sentence he would have received pursuant to the applicable matrix sentencing guidelines a full, fair and meaningful

opportunity through the "major changes" in the statutory language and provisions are being denied in violation of due process and equal protection.

Prior to July 1, 1998 a person in the custody of DOC who became eligible for consideration for parole, qualified for the PPB to make an assessment and determination whether or not he/she qualified for either a parole under one-third (1/3), The Forgotten Man's Act pursuant to title 57 O.S. (1971) Section 332.7 or the Pre-Parole Conditional Supervision Program pursuant to 57 O.S. (1989) Section 574.3 of the Oklahoma Prison Overcrowding Emergency Powers Act. The Board's recommendation for each release program recognized pre-1998 inmate's right to be present at the proceedings/hearing where his/her presence contributed to the fairness of the hearing/procedure affording pre-1998 inmates the opportunity to correct and/or rebut inaccurate information presented in any 'report' being considered for or against the inmate, such as" erroneous "criminal history reports: and/or erroneous "misconduct reports", which within it self operates as a *de facto* witness.

Pre-1998 inmates were afforded the benefit of appearing in person during a single stage parole examination/hearing giving the right to be confronted with the witnesses against them unless they waived their in-person examination/parole hearing, as attached to their rights in 57 O.S. (1971) Section 332.7. The pre-1998 eligibility, consideration and criteria in Section 332.7 (1971) in its statutory language and provision nothing precluded the pre-1998 inmate from his right to be confronted with the witnesses against him in lieu of a personal examination whether or not his conviction and sentence was for a non-violent crime and/or a violent crime as defined in Section 571 of title 57 or Section 13.1 of title 21. Neither of these statutes in its statutory language and construction was created to define, restrict and/or prohibit pre-1998 inmates within their effective date from their in-person examination.

A review of 21 O.S. (1999) Section 13.1 will reveal that it specifies to violent crimes committed after July 1, 1998 crimes and offenders required to serve not less than eighty-five percent (85%) of any sentence of imprisonment prior to becoming eligible for consideration for parole (post-1998 inmates). Because Plaintiffs crime was committed prior to 1984 in 1982, title 57 O.S. (1984) Section 571 unjustifiably discriminates against him/persons convicted of a violent crime as set forth in Section 571 (a statutory class of prisoners) in violation of Article 6 Section 10 and the Equal Protection component of Article 2 Section 7 of the Oklahoma Constitution as well as the equal protection clause of the 14th Amendment to the U.S. Constitution. Section 571 presents a legal question of *ex post facto* and because it was constructed in its statutory language to defined who was eligible and who was not eligible to receive "emergency time credits" towards an early discharge of sentences for pre-1998 inmates and allowing them to be released on pre-parole program. Whether a non-violent and/or violent crime offender.

The major changes crafted by the 1997 Legislature within its statutory provision and language pertaining to pre-1998 inmates, to abolish all previous types of parole consideration for those crimes committed prior to July 1, 1998 and mandated upon their eligibility and consideration as meeting the criteria/qualification to include in the PPB examination for a parole determination of what sentence he/she would have received pursuant to the applicable matrix, provided in Section 6, 698 through 601, Chapter 133 O.S.L. (1997) to continuously deny these 'major changes' to pre-1998 inmates violates equal protection and due process of law to a full, fair and meaningful opportunity for in-person examination to include opportunity to confront any and all witnesses/reports against him. Twice, the Plaintiff has been denied a realistic opportunity to obtain the provisions and procedures for his crime committed prior to July 1, 1998 and the 'only' provisions and procedures obtained by Plaintiff after first becoming eligible for consideration for parole in 2015 and 2018 meeting the qualifications within the statutory language for

his crime committed prior to July 1, 1998, after serving fifteen (15) years, one-third of 45 years, to include Life, are two (2) unrealistic Jacket/paper reviews, two denials for consideration to be considered for parole by the PPB (2015 and 2018) two (2) refusals to participant in an impartial investigation and yes vote to a second stage procedure, two (2) three (3) years pass-over review and consideration upon the merits of both applications/letters submitted by the Plaintiff and the two (2) investigative reports submitted by the Staff of the Board not considered on their merits.

Because the PPB have twice unjustifiably used Section 571 to discriminate against Plaintiff's two (2) parole reviews/as a gateway to Plaintiff's request upon the merits of his two applications (2015 and 2018) to unjustifiably deprive-him-among a statutory class of offenders the right to be confronted with the witnesses/reports being considered against him to detriment in lieu of a personal examination, where his presence would have surly contributed to the fairness of the procedure 6th and 14th Amendments. Due process and equal protection of law denied in violation of both state and federal constitution-U.S.C.A. 14th Amendment.

## (4) Relief requested:

Because the PPB are unjustifiably using title 57 O.S. Section 571 as a 'gateway' to deprive/prohibit Plaintiff to a realistic opportunity to contribute to the fairness of his parole review/procedure in lieu of his personal examination to question him directly in order to assess his readiness for parole and the risk to the public, if any and to directly hear Plaintiff's input, if any, and most of all to assess what sentence he would have received pursuant to the applicable matrix as mandated by the statutory provision among the 'major changes; for pre-1998 inmates upon their eligibility, consideration and qualification in meeting the criteria to be administered. 57 O.S. Supp. 1997 through 2018, Section 332.7 (A) (1) (3) (C) (E) (F) and (M) Supp. 2011.

For these reason herein as presented, the PPB should be ordered to place Plaintiff on their earliest docket hearing and conduct a full, fair and impartial hearing applying the statutory provision for Plaintiff's crime committed prior July 1, 1998.

IT IS SO PRAYED.

3.   **Claim III:**

(1)   **List the right that you believe was violated:**

Plaintiff, a person in the custody of the Department of Corrections (DOC) for a crime he committed prior to July 1, 1998, and having had all previous types of parole considerations abolished by the 1997, Legislature. 57 O.S. Supp. 1998-2018 Section 332.7 (A) (1) (E) making a major change in the parole laws while creating an established statutory liberty interest right in 57 O.S. Supp. 1998-2018, Section 332.7 (A) (1) (3) (F) (L), or M.L. or O: "All references in this section to matrices or schedule "shall" be construed with reference to the provisions of Sections 6, 598, 599, 600 and 601, Chapter 133 O.S.L. 1997, the 1997 thru 2018: Oklahoma Legislature has charged the PPB to/"shall" promulgate rules for the implementation of subsections A, B, and C of this section. Those rules were commanded/"shall" include, but not limited to procedures for determining what sentence a person eligible for parole consideration to subsection A of this section would have received under the applicable matrix. 57 O.S. Supp. 2018, Section 332.7 G. Plaintiff has been denied the statutory language commands embedded in Section 332.7 (A), and its subsections for crime he committed prior to July 1, 1998-twice 2015 and 2018 he met eligibility and consideration criteria upon his application review, twice denied in violation of 5th and 14th Amendments "Due Process of Law".

(2)   **List the defendant(s) to this claim: (If you have sued more than one defendant, specify each person or entity that is a defendant for this particular claim.)**

21

The defendants to this claim are the same defendants listed to claim (I) one.

(3)    **List the supporting facts:**

In this claim for review the facts are "for this past twenty-one (21) years past and present PPB members have been charged with the responsibility and authority to develop procedure to determine what sentence a person whose crime was committed prior to July 1, 1998, who has "become eligible for consideration for parole would have received under the provision of the applicable matrix upon their recommendation 57 O.S. Supp. 1998 thru 2018 Section 332.7 (A) (1) (2) (3) and (4). For twenty-one (21) years the PPB and its members have refused to perform and administer certain provision and procedures as commanded within the statutory language of Section 332.7 upon their duties for crime committed prior to July1, 1998. See the statutory language construction in subsection (A) (2) which reads:

> Has reached at least sixty (60) years of age and also has served at least fifty percent (50%) of the time of imprisonment that would have been imposed for that offense pursuant to the applicable matrix, provided in Section 598 through 601, Chapter 133, O.S.L. 1997; provided however, no inmate serving a sentence for crimes in Schedules A, S-1-S-2 or S-3 of Section 6, Chapter 133 O.S.L. 1997 or life imprisonment without parole shall be eligible to be considered for parole pursuant to this paragraph

A major change in Oklahoma's Pardon and Parole Laws. For 21 years the PPB members have refused to administer the above (change in the parole laws for pre-1998 offenders), the statutory language of subsection (A) (2) their refusal to administer 57 O.S. Supp. 1998 through 2018, Section 332.7 (A) (1) (2) (3) in its entirety has become a major contributing factor to Oklahoma's mass and overcrowding prison problems and conditions making Oklahoma number one in the world in incarceration and continue incarceration of its population. Needing more than "no incarceration plan "and "no parole plan" of

substance in preparing one for society and a realistic second chance program towards release.

For 21 years the PPB has refused to administer Section 332.7 (A) (2) to its aging population sixty (60) years of age or older population, as was first mandated in its statutory language in 1997 by the Oklahoma Legislature for a person's crime committed prior to July 1, 1998. Because of that refusal the 2018 Legislature has created another aging provision statute empowering the PPB the authority to grant paroles, due to 60 years or older and basically the same criteria. See 57 O.S. (2018) Section 332.21 effective date November 2018.

After 21 years by the PPB in refusing to perform and/or administer their mandated duties upon their statutory commands in 57 O.S. Supp. 1997-2018, Section 332.7 (A) (2) the 2018 legislature have created its own statutory provision to grant parole/relief to the aging inmates of 60 years or older to include those whose crimes were committed prior to July 1, 1998.

In light of the recent empowered mandate (57 O.S. § 332.21) giving the PPB the power to grant paroles to 60 year olds and older, as first being the command for provisions and procedures for those offenders crimes committed prior to July1, 1998, twenty-one years ago in meeting that same criteria for release 57 O.S. Supp. 1998-2018, Section 332.7 (A) (2) for 21 years due process to a meaningful opportunity for release have been denied by the PPB in their refusal to administer the major changes provided in Section 332.7 (A) (1) (2), through their mandated provision/procedure to determine what sentence a person eligible for parole consideration would have receive under the applicable matrix.

The same due process of law have been denied for 21 years to those crimes committed prior to July 1, 1998, to those persons in the custody of DOC meeting the criteria for eligibility for parole consideration under Section 332.7 (A) (1) (3) and (4). A major change provided in Oklahoma Pardon and Parole Act effective 7/1/98.

The 1997 legislature, that crafted Title 57 Section 332.7, intended for Plaintiff who is charged with a crime he committed prior to July 1, 1998 to gain the benefit of the matrix setting a sentencing range as a guide for parole and a definite end to his incarceration, to include aging prisoners 60 years old and older once they became eligible pursuant to 57 O.S. Supp. 1998 subsection 332. 7 (A) (1) (2) the 2018, legislature had to revisit these commands and mandate in 57 O.S. (2018), Section 332.21, evidenced that the PPB for the past 21 years have violated due process of law and equal protection for persons in the custody of DOC, for a crime committed prior to July 1, 1998. See 57 O.S. Supp. 1998 thru 2018 section 332.7 (A) (1) (2) (3) (4) and its subsections. *SEE Attachment = G*

Petitioner a sixty-nine (69) year old aging prisoner, who twice have had scheduled parole dockets jacket reviews (November 2015 at sixty-six (66) years old and November 2018, sixty-nine (69) years old) the PPB disregarded the statutory language of 57 O.S. Supp 1998 thru 2018, Section 332.7 (A) (1) (2) (3) (4) , which violated Plaintiff's right to a meaningful opportunity for parole consideration and his right to a fair and impartial parole consideration upon the merits of both his applications in violation of his Fourteenth Amendment rights to Equal Protection-and due process. 14th Amendment, and his right to receive the major changes for his crime committed prior to 7/1/98 in violation of both state and federal constitution's 14th Amendment

The 2018 legislature, who crafted and reconstructed 57 O.S. Supp. 1998, Section 332.7 (A) (1) (2) to 57 O.S. (2018) Section 332.21 for purpose of granting sixty (60) year of age or older aging prisoners a meaningful opportunity for release upon his ability to request a parole hearing, and upon the PPB findings by a preponderance of the evidence that the prisoner if released, can live and remain at liberty without posing a substantial risk to public safely. See the rules for the implementation for procedures and provisions granting the PPB the power to parole a prisoner who: 1. Is sixty (60) years of age or older; 2. Has served, in actual custody, the shorter of ten

(10) years of the term or terms of imprisonment, or one-third (1/3) of the total term or terms of imprisonment; 3. Poses minimal public safety risks warranting continued imprisonment. 57 O.S. § 332.21 (1) (2) (3) (B) (C) (D) (1) (2) (E) (F) (G) (H) (I) (1) (2). Attachment # ___.

Supporting fact that due process of law are continuously being denied to offenders crimes committed prior to July 1, 1998, in the statutory language and commands in 57 O.S. Supp. 1998 thru 2018, Section 332.7 and its subsections is evidenced in 57 O.S. Section 332.21 (effective date November 1, 2018). And because the 2018-19 PPB have been empowered to grant parole hearings under the provisions Section 332.21 in following the directive within its statutory language therein.

This Honorable Court should grant Plaintiff, whose crime was committed prior to July 1, 1998, an order directing the 2019 PPB to conduct a full fair and meaningful opportunity for a parole hearing, as directed by the 1997 legislature in the statutory language of 57 O.S. Supp 1998 thru 2018, Section 332.7 (A) and its subsections and to administer the provisions and procedures pertaining to his crime committed prior to July 1, 1998, in which he has a **statutory liberty interest right** to obtain the fundamental fairness principles of due process to a fair and impartial parole hearing. U.S.C.A. Amend 14th to remedy the violation of Plaintiff's substantive and procedural due process rights by the PPB. And to enjoin defendants from conducting parole hearings in violation of the applicable provisions in 57 O.S. § 332.7, due to the Equal Protection and Due Process clause of the Fourteenth Amendment to the United States Constitution. Defendants have selectively applied Section 332.7 (A) and its subsections to offender's crime committed prior to July 1, 1998, while denying the majority similarly situated in their refusal to administer the major changes in Oklahoma Parole laws. 14th Amend.

IT IS SO PRAYED

**(4)    Relief requested: (State briefly exactly what you want the court to do for you.)**

Because, the Oklahoma parole system has failed in its duties to provide Petitioner a meaningful opportunity to parole review, as mandated by the statutory language and commands within Title 57, O.S. Supp. 1998 thru Section 332.7 (A) 2018, for his crime committed prior to July 1, 1998, upon his eligibility for consideration, the fundamental fairness principles of due process to a full, fair and meaningful opportunity to release through an impartial parole review/hearing has been denied.

Thus, in the present issue/claims, the Oklahoma statute created by the 1997, legislature must be examined to determine whether a liberty interest has been created in its statutory language by its commands and mandate. An interests protected by due process by both state and federal constitution Title 57, O.S. Supp 1998-2018 Section 332.7, and its subsections clearly and unambiguously uses the word "shall" a dozen or more times in its regulatory framework and construction in commanding the PPB to apply and/or administer the matrix procedure of the Act/57 , O.S. Supp. 1998 thru 2018, Section 332.7, subsection 6, Chapter 133, O.S.L. to those offenders' crimes committed prior July 1, 1998, except to an inmate serving a sentence of life imprisonment without parole at the earliest of completion of 1/3 of sentence and/or has reached 85% of the midpoint of the time of imprisonment that would have been imposed for his offense. Section 332.7 (A) (3) see, Section (E). "Any person in the custody of the Department of corrections for a crime committed prior to July1, 1998,who has been considered for parole on a docket created for a type pf parole consideration that has been abolished by the legislature "shall" not be considered for parole except in accordance with this section. SEE Attachment #1 As Evidence in Support to Claimand #J.

Because the 1997 Oklahoma Legislature repealed the Oklahoma's Forgotten Man Act and replaced it with major changes in the Act which

provides "for a crime committed prior to July 1, 1998, any person in the custody of the Oklahoma Department of Corrections "shall" be eligible for consideration of parole [when he has] completed serving one-third (1/3) of the sentence. Okla. Stat. tit. 57 § 332.7 (A) (1). See *Maynard v. Fallin, et al.,* 564 Fed. Appx. 943, (2014). See Amendment to 57 O.S. 2011, Sections 332.7 (A) (2) where the wording Truth in sentencing has been deleted from the Act/statute to read the applicable matrix. See also, Section (F), which reads:

> "The Pardon and Parole Board "shall" promulgate rules for the implementation of subsection A, B, and C of this Section. The rules "shall" include, but not limited to procedure for determining what sentence a person eligible for parole consideration pursuant to subsection A [crime committed prier to July 1, 1998] of this section would have received under the applicable matrix."

Plaintiff, twice have been denied his invested Liberty Interest right to the above mentioned procedure, (November, 2015 and November 2018). Plaintiff have twice been denied a full, fair and an impartial parole hearing review on the merits of his two (2) applications. Twice, the PPB has entered a partial review to the completed reports submitted by two (2) different staffs, preparing investigative reports, their recommendations for "yes vote" and refused to conduct their duties to determine what sentence Plaintiffs crime committed prior to July 1, 1998, he would have received under the applicable matrix. Thus denying Plaintiff a meaningful opportunity for release by failure to examine into the merits of his applications for parole and make an impartial recommendation to the Governor based on the major changes to the Pardon Parole Board Act. In violation of due process and equal protection of law both state and federal constitution 14th Amendment.

4.    **Claim IV:**

(1)    **List the right that you believe was violated:**

The defendants (the 2018 PPB) refused to administer the "new major changes" as crafted by the 2018 Legislature under House Bill 2286, C. 117 Section 2, effective date November 1, 2018, mandated as Title 57, O.S. Supp. 2018, Section 332.7 and its subsections to Plaintiff's November 2018 reconsideration for parole in violation of due process and equal protection of law 14th Amendment U.S.C.A. in violation of both state and federal constitution.

(2)    **List the defendant(s) to this claim: (If you have sued more than one defendant, specify each person or entity that is a defendant for this particular claim.)**

The defendants to this claim are the same defendants listed to claim (I) one.

(3)    **List the supporting facts:**

The defendants (the 2018 PPB) in their refusal to administer House bill 2286, which was approved in 2018 to streamline the parole review process for both non-violent and violent offenders, who met the criteria for eligibility and consideration for a full, fair and meaningful opportunity under statutory language and provisions for plaintiff's crime committed prior to July 1, 1998. See also Exhibit "A", PPB's policy and procedure manual eligibility criteria-docketing, effective date November 6, 2008 policy 004, page 1, which states:

I.    Policy: eligibility criteria will be established for clemency. The criteria will be implemented by procedures distributed by the executive director and will follow statutory provision. See entity for a crime committed prior to July 1, 1998. November 1, 2018, Amended by laws and cite as: 57 O.S. Supp. 2018 § 332.7 and its subsections were approved and re-approved by statutory language and provision crafted by the 1998 legislature to

streamline the parole process through a sentencing guidelines/applicable matrix provided in Section 6, Chapter 133 O.S.L. 1997, for offenders' crime committed prior to July 1, 1998 through 2018, twenty-one (21) years ago. The Plaintiff was denied that process by the 2018 PPB when they failed and refused to apply the statutory language and provisions to his November 2018 jacket paper review. The 2018 PPB also failed to apply the statutory language to non-violent offenders, who became eligible for parole under subsection C. For a crime committed on or after November 1, 2018 after serving one-fourth (1/4) of their sentence upon their November and December 2018 docket reviews and their January and February 2019 paroles and commutations reviews.

The supporting facts are evidenced by the 2018 PPB's refusal to administer the mandated laws under the provisions of House Bill 2286/57 O.S. Supp. 2018, § 332.7 and its subsections therein and are clearly shown in the removal of four (4) of the 2018 PPB members/defendants: (1) Tom Gillert, (2) Robert Macy, (3) Michael Kris Steele, and (4) Roberta "Bobbie" Fullerton. The new board members three (3) of whom were recently appointed by newly elected Governor Kevin Stitt: (1) Adam Luck, (2) Robert Gilliland and Kelly Doyle. See exhibit attached # _____. New appointments were also made by the Oklahoma Court of Criminal Appeals and by the Oklahoma Supreme Court. C. Allen McCall, esq., who was previously appointed by past Governor Mary Fallin, was re-appointed by the Oklahoma Supreme Court and Larry Morris was appointed by the Oklahoma Court of Criminal Appeals.

The newly appointed PPB members unanimously paroled all but a handful of 73 nonviolent offenders listed on the March 2019 administrative parole docket, which fell under House Bill 2286/57 O.S. Supp. 2018 § 332.7 effective date November 1, 2018, being approved in 2018 to streamline the parole process under H.B. 2286/subsection C.1.2. and R House Bill 2286 also mandated: "Any person in the custody of the Department of Corrections for a crime committed prior to July 1, 1998, who has been considered for a parole

on a docket created for a type of parole consideration that has been abolished by the legislature "shall" not be considered for parole except in accordance with this section subsection F. of 57." See also subsection G. "The pardon and parole board 'shall' promulgate rules for the implementation of subsections, A, B, and C of this section. The rules 'shall' include, but not be limited to, procedures for reconsideration of persons denied parole under this section and procedure of determining what sentence a person eligible for parole consideration pursuant to subsection A of this section would have received under the applicable matrix."

Supporting evidence in the 2015/2018 PPB denied plaintiff the above mentioned procedures/hearings upon his eligibility for parole consideration/reconsideration upon his scheduled November 2018 review after effective date November 1, 2018 as mandated by 2018 Legislature in House Bill 2286/57 O.S. Supp. 2018, § 332.7 in violation of due process and equal protection of law within his statutory liberty interest right to have house Bill 2286 administered to his parole review process for a crime committed prior to July 1, 1998. The 2018 PPB members failed in their duties to follow statutory directive as mandated in its statutory language to be followed in its entirety and not in part, as was exhibited in March 2019 administrative parole docket and paroles granted under House Bill 2286/57 O.S. Supp. 2018 § 332.7 G., which mandates: "The PPB 'shall' promulgate 'rules' for the "implementation" of subsections A,B, and C of this section.

The rules 'shall' include, but not be limited to, procedures for reconsideration of persons denied parole under this section and procedure for determining what sentence a person eligible for parole consideration pursuant to subsection A of this section would have received under the applicable matrix."

As evidenced under the 'new major changes' the PPB have implemented in part, 'rules' and 'procedures' for subsections B and C, in which: "For a violent crime committed on or after July 1, 1998, and before

November 1, 2018, any person in the custody of DOC 'shall' be eligible for consideration for parole who has completed serving one-third (1/3) of the sentence." (As opposed to previously eighty-five percent (85%)). Subsection B of Title 57, See also "new major changes" the PPB have implemented in part, "rules" and "procedures" for a crime committed on or after November 1, 2018, any person in the custody of DOC 'shall' be eligible after serving one-fourth (1/4) of the sentence or consecutive sentences imposed, according to the following criteria:

1.   A person eligible for parole under this subsection shall be eligible for administrative parole under subsection R of this section once the person serve one-fourth (1/4) of the sentence or consecutive sentences imposed; provided, however, no inmate serving a sentence of life imprisonment without parole, a sentence for a violent crime as set forth in Section 571 of this title or any crime enumerated in Section 13.1 of Title 21 of the Oklahoma Statutes "shall" be eligible for administrative parole. Subsection C of Title 57.

As evidenced above the Oklahoma PPB has applied in part over a period of twenty-one (21) years Title 57 O.S. § 332.7 and its amendments by Oklahoma's Legislative laws in a systemically unfair and un-meaningful operation against a class of offenders, whose crimes were committed prior to July 1, 1998 in violation of their due process and equal protection of law against both state and federal constitutions, U.S.C.A. 14th Amendment; Oklahoma Constitution Article 2, Section 7 "Due Process of Law." The 1998-2018 Legislatures directives and mandates to help reduce the state's prison population over the past twenty-one (21) years have consistently been denied, as evidence in plaintiff's claims one, two, three and four to those crimes committed prior to July 1, 1998 by the PPB's refusal to administer 57 O.S. Supp. 1998-2018, Section 332.7 and its subsections in whole, as mandated and not in part, as being presently exhibited. As evidenced in PPB's policy and procedure manual-eligibility criteria-docketing, effective date November 6, 2008 policy 004. I. Policy criteria will be established for clemency. This

criteria will be implemented by procedures distributed by the executive director and will fellow statutory provisions. See directive for eligibility criteria for clemency and criteria for implementation for procedures following statutory language and provisions for a crime committed prior to July 1, 1998 mandated by 57 O.S. Supp. 1998-2018, Section 332.7 and its subsections statutory provisions. As re-mandated by House Bill 2286 subsection G.

The PPB "shall" promulgate "rules" for the implementation, of subsection A, B, and C of this section. The rules shall include, but not be limited to procedures of reconsideration of persons denied parole under this section and procedures for determining what sentence a person eligible for parole consideration pursuant to subsection A of this section would have received under the applicable matrix. See also subsection O. All references in this section to matrices or schedules "shall" be construed with reference to the provisions of Sections 6, 598, 599, 600 and 601, Chapter 133, O.S.L. 1997.

**(4)    Relief requested: (State briefly exactly what you want the court to do for you.)**

Plaintiff requests the federal court to examine Title 57, O.S. Supp. 1998 through 2018 Section 332.7 as it pertain to his crime committed prior to July1, 1998. And the provision and procedures mandated for him to receive in a full, fair and meaningful parole hearing and, that his factual allegations has demonstrated he has a plausible claim for relief in violation of Plaintiff's "Liberty Interest Right" to 57 O.S. Supp. 1998 thru 2018 Section 332.7 (A), and its subsections pertaining to his crime committed prior to July1, 1998.

For these reasons herein as presented and supporting facts to denial of due process of law to a full, fair and meaningful opportunity to the provision and procedures, as mandated and commanded by the 1997, Legislature for plaintiff's parole review on the merits of his applications.

The PPB should be ordered to place Plaintiff on their earliest Pardon and Parole docket hearing and conduct a full, fair and impartial hearing as

mandated for Plaintiff's review for a crime committed prior to July 1, 1998, thereby applying what is due in its statutory language and provision effective date July 1, 1998 through November 1, 2018.


IT IS SO PRAYED


## VI.   Declarations

I declare under penalty of perjury that the foregoing is true and correct.

_Wadress R. Motyer Jr._
Plaintiff's signature        Date   _5/3/19_


I further declare under penalty of perjury that I placed this complaint in the prison's legal mail system, with the correct postage attached, on the __5__ day of __MAY__, 20__.


_Wadress R. Motyer Jr_   _5-3-19_
Plaintiff's signature        Date